IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 122-072 |
| | ) | |
| CHRISTOPHER DAVID BASKETT | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The Indictment charges Defendant with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).  (Doc. no. 1.)  Defendant seeks suppression of a handgun found and statements made during the investigation of gunshots fired in downtown Augusta, Georgia, which resulted in the present Indictment.  After careful consideration of the briefs and evidence presented at the hearing, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**.  (Doc. no. 18.)

**I.     BACKGROUND**

Richmond County Sherriff's Office Deputies Timothy Smith and Drew Phillips testified at the February 6, 2023 suppression hearing.  The record also contains body camera footage from Deputies Smith, Phillips, and M. Rowe.  (Smith Body Worn Camera, doc. no. 26, Ex. 2, and doc. no. 28, Ex. 3 ("Smith BWC"); Phillips Body Worn Camera, doc. no. 26, Exs. 3-6, and doc. no. 28, Ex. 1 ("Phillips BWC"); Rowe Body Worn Camera, doc. no. 28, Ex. 2 ("Rowe BWC").)

A multitude of officers converged on the scene of gunshots fired in downtown Augusta around 2:00 a.m. on Sunday, September 6, 2020.  Among them was Deputy Smith, who was

on special duty detail providing security for a restaurant on the north side of Broad Street. (Court's recording system, *For the Record* ("FTR"), 01:28:16-01:29:37.)

While on Broad Street, Deputy Smith heard multiple gunshots southwest of him near Sixth Street, and quickly ran in that direction while drawing his firearm. (FTR 01:29:20-01:29:57, 01:38:58-01:41:10; Smith BWC 02:18:35-02:18:41.) As Deputy Smith arrived at the area of the gunshots and was crossing Sixth Street, he yelled "Stop!" to a black sedan that was leaving the scene, but the sedan did not stop. (FTR 01:30:34-01:31:11, 01:41:42-01:42:47; Smith BWC 02:18:41-02:18:45.) Immediately upon crossing the street and entering a hotel parking lot, Deputy Smith saw Defendant standing by the open driver's door of a pickup truck, parked with its lights on. (FTR 01:31:35-01:33:05, 01:42:51-01:47:56; Smith BWC 02:18:45-02:19:03.) Deputy Smith testified he observed Defendant holding a handgun, which he was placing, or removing from, underneath the driver's seat. (FTR 01:31:35-01:33:05, 01:42:51-01:47:56.)

Instantly surmising Defendant was involved in the shooting, Deputy Smith pointed his firearm at Defendant, instructed Defendant and two others who were seated in the truck to raise their hands, frisked Defendant, and opened the truck door to look for the handgun. (FTR 01:34:53-01:36:24, 01:49:15-01:51:35; Smith BWC 02:18:57-02:19:40.) While Deputy Smith searched for the handgun, Deputy Phillips stood by Defendant, and Defendant told Deputy Phillips he also heard the gunshots. (Phillips BWC 02:22:01-02:22:30.) After Deputy Smith found the handgun under the driver's seat, Deputy Phillips handcuffed and frisked Defendant. (FTR 02:32:55-02:33:20; Smith BWC 02:19:40-02:19:45; Phillips BWC 02:22:27-02:24:45.)

Deputy Smith handcuffed one of the persons found in the truck, explaining he was detaining her because he saw her and Defendant by the truck with the handgun right after the

2

gunshots. (Smith BWC 02:22:08-02:22:28.) Deputy Phillips walked Defendant to his patrol car, and Defendant, without being asked, said the handgun was clean and registered to his brother. (Phillips BWC 02:24:53-02:26:43.) Deputy Phillips told Defendant he was not under arrest but instead being temporarily detained while they checked to see whether the handgun was stolen. (Id.) Deputy Phillips placed Defendant in his patrol car. (Id.)

Deputies Smith and Phillips continued their investigation outside Maserati's, a nightclub located across an intersection from the hotel parking lot. (FTR 02:04:20-02:05:37; Smith BWC 02:25:09-02:26:26.) Deputy Smith told other police officers Defendant was a suspect. (Smith BWC 02:25:09-02:26:26.) An eyewitness said the shooter was wearing a white and blue shirt. (Smith BWC 02:23:26-02:25:09, 02:27:43-02:28:06.) Deputy Smith took the eyewitness to see Defendant, who was wearing a white shirt, and other suspects, and the eyewitness said Defendant was not the shooter after briefly looking at him through the patrol car window. (Smith BWC 02:28:06-02:28:21; Phillips BWC 02:31:00-02:31:05.) The eyewitness did not identify any other suspect as the shooter. (See Smith BWC 02:27:43-02:28:03.)

For the next few minutes, Deputies Phillips and Rowe ran computer checks to identify Defendant and search for any active warrants but were unable to access all the necessary information with only Defendant's South Carolina driver's license. (FTR 03:02:37-03:03:36; Phillips BWC 02:30:30-02:32:52.) Deputy Phillips asked for Defendant's social security number, assuring him, "It shouldn't be too much longer." (Phillips BWC 02:33:04-02:34:04.) Deputy Phillips asked no other questions, but Defendant volunteered he was a convicted felon and the handgun belonged to his brother. (FTR 03:39:15-3:39:43; Phillips BWC 02:34:41-02:34:53.) Deputy Phillips called the records office, which confirmed five minutes later

3

Defendant was a felon with an outstanding warrant in South Carolina. (FTR 03:22:57-03:23:10; Phillips BWC 02:35:17-02:50:25.)

After Deputy Phillips confirmed Defendant's felon status, other officers found two bullet casings at Maserati's. (Phillips BWC 02:58:50-02:59:40; Rowe BWC 02:56:45-02:57:40.) Deputy Phillips determined the casings did not match the handgun found in Defendant's truck, and the handgun had not been fired. (Phillips BWC 02:58:50-02:59:40; FTR 03:37:13-03:37:21, 03:38:55-03:39:04.) The officers cleared Defendant as a suspect in the shooting but arrested him for possession of a firearm by a convicted felon. (See doc. no. 26-1, Ex. 1; FTR 03:37:35-03:38:27; Rowe BWC 03:12:00-03:12:10; Smith BWC 03:11:40-03:11:48.) Only nine minutes elapsed from the time Deputy Smith first encountered Defendant until Defendant told Deputy Phillips he was a convicted felon. Defendant made that statement just three minutes after the eyewitness said Defendant was not the shooter. Defendant was not read his Miranda rights during these periods.

## II.     DISCUSSION

Defendant argues his statements should be suppressed because he was not Mirandized, and the handgun and statements should be suppressed because the officers had insufficient reason to search the truck and detain him. The Court disagrees because Defendant's statements were voluntary and unprompted, and both probable cause and reasonable suspicion justified the truck search and temporary detention.

### A.    Defendant's Voluntary Statements, Made in the Absence of Any Police Questioning or Prompting, Should Not Be Suppressed

"No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. Amend. V. "To give force to the Constitution's protection against compelled self-incrimination, the Court established in Miranda, 'certain procedural safeguards that

4

require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" Florida v. Powell, 559 U.S. 50, 59 (2010) (quoting Duckworth v. Eagan, 492 U.S. 195, 201 (1989)).  Under Miranda, prior to conducting a custodial interrogation, law enforcement officers must warn the interview subject that he has a "right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444 (1966).  The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Id.

Not all statements made in custody are considered the product of interrogation and require Miranda warnings, but, instead, the interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980) (citing Miranda, 384 U.S. at 478).  Thus, Miranda warnings are only necessary when the person in custody is subjected to express questioning or its functional equivalent that officers "should have known were reasonably likely to elicit an incriminating response." Id. at 302.

Here, Deputy Phillips only asked Defendant for his social security number before Defendant volunteered his felon status.  Because this question was not reasonably likely to elicit an incriminating response, the statements are not suppressible under Miranda, regardless of whether Defendant was in custody.  See, e.g., United States v. Ubaldo-Viezca, 398 F. App'x 573, 580 (11th Cir. 2010) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the holding in Miranda." (internal quotations omitted)).

### B.     Officers Did Not Violate the Fourth Amendment by Searching Defendant's Truck and Detaining Him

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . ." U.S. Const. Amend. IV. "For Fourth Amendment purposes, a seizure occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . .'" Roberts v. Spielman, 643 F.3d 899, 905 (11th Cir. 2011) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). The standard to determine whether a seizure was reasonable depends on whether that seizure was "an investigative stop of limited duration for which reasonable suspicion is enough" or "a detention that amounts to an arrest for which probable cause is required." United States v. Acosta, 363 F.3d 1141, 1145-46 (11th Cir. 2004). Likewise, a search is generally reasonable if conducted pursuant to a search warrant supported by probable cause, and searches conducted without a search warrant are considered "per se unreasonable under the Fourth Amendment [and are] subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).

On a suppression motion involving a warrantless search or seizure, the defendant bears the initial burden of showing he was subjected to a warrantless search or seizure, and "the burden of proof shifts to the [government] to establish that an exception to the search warrant requirement was applicable in the subject case and that the search and seizure was, in fact, a reasonable one." See United States v. Bachner, 706 F.2d 1121, 1125-26 (11th Cir. 1983); United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977).[1]

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

For the reasons explained below, the Court finds the search of the truck and Defendant's detention were supported by probable cause, and, in the alternative, the officers' actions were nonetheless supported by reasonable suspicion and within scope of a Terry stop.

### 1. Officers Had Probable Cause from the Inception of the Encounter

To conduct a warrantless arrest under the Fourth Amendment, an officer needs probable cause to believe the suspect committed a crime in the officer's presence. District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018). Probable cause to arrest exists "when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (quoting Wesby, 138 S. Ct. at 586).

Similarly, "[p]robable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Goddard, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The automobile exception to the warrant requirement permits officers to search an operational vehicle without a warrant if the totality of the circumstances indicate "there is a fair probability that contraband or evidence of a crime will be found in the vehicle." United States v. Tamari, 454 F.3d 1259, 1264 (11th Cir. 2006); United States v. Ross, 456 U.S. 798, 799 (1982).

"[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting Gates, 462 U.S. at 232). These probabilities need not come from direct observation but may be inferred from the particular circumstances. United States v. Jenkins, 901 F.2d 1075, 1080

(11th Cir. 1990). Probable cause may also be based on evidence that would not be legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311-12 (1959). "[P]robable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts." Gates, 462 U.S. at 232. In making this determination, a court may also "examine the collective knowledge of law officers if they maintained at least a minimal level of communication during their investigation." United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985). Probable cause is not a high bar. Wesby, 138 S.Ct. at 586.

Turning to the case *sub judice*, Defendant has carried his initial burden of showing that he was subjected to a warrantless seizure of his person and search of his truck, and the Court now considers whether the government has carried its burden of showing the search and seizure were reasonable.

Deputy Smith testified that, when he rushed to the area of the gunshots, he observed Defendant holding a handgun while either placing it, or removing it from, underneath the driver's seat while parked near the street. The Court finds Deputy Smith's testimony credible. He has been a sheriff's deputy for five years, was present for all the events in question, and provided testimony consistent with the body camera footage. See United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) ("Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.") (citation omitted).

Based on Deputy Smith's testimony, there was probable cause to believe Defendant violated O.C.G.A. § 16-11-103 by discharging a firearm within fifty yards of a public road. See United States v. Dunn, 345 F.3d 1285, 1290-92 (11th Cir. 2003) (finding probable cause to arrest for violation of O.C.G.A. § 16-11-103 when officers saw suspect place rifle into car

8

trunk five minutes after nearby gunshots, despite witnesses stating suspect was not shooter and absence of shell casings in immediate vicinity); see also United States v. Hawkins, 37 F.4th 854, 857 (2d Cir. 2022) (finding probable cause to arrest two suspects exiting building minutes after gunshots from rooftop after pat down revealed one suspect carrying weapon); United States v. Arcobasso, 882 F.2d 1304, 1306 (8th Cir. 1989) (finding probable cause to arrest when officers responded to gunshots and saw suspect "dry-firing" gun); United States v. Zimmerman, 86 F. Supp. 3d 124, 131 (N.D.N.Y. 2015) (finding probable cause to arrest suspect found near site of gunshots after informant said gunshots came from suspect's vehicle); United States v. Thompson, No. 2:10-CR-125-WHA, 2011 WL 1344192, at *3 (M.D. Ala. Feb. 14, 2011) (finding probable cause to arrest suspect found with weapon in vehicle identified as source of gunshots), *report and recommendation adopted in part, rejected in part on other grounds*, 2011 WL 1344185 (M.D. Ala. Apr. 8, 2011).

    The existence of probable cause authorized the officers to detain Defendant temporarily while they continued their investigation into the gunshots. Indeed, probable cause would have authorized the officers to arrest him, although they did not do so until Defendant subsequently admitted he was a convicted felon. Probable cause thus supported Defendant's seizure regardless of the scope or degree of the seizure. See Dunn 345 F.3d at 1290 ("[W]e find it unnecessary to engage in a detailed analysis of whether [suspect's] detention was permissible under Terry . . . . [officers] plainly had probable cause to arrest appellant for discharging a weapon in public.").

    Under the automobile exception to the warrant requirement, Deputy Smith also had probable cause to search Defendant's truck for the handgun upon his initial approach. Defendant's truck was operational, and there was a fair probability under the circumstances that

9

Deputy Smith would find the handgun he observed when he first approached Defendant.  See United States v. Delva, 922 F.3d 1228, 1243 (11th Cir. 2019) (finding automobile exception authorized warrantless search after suspect parked and exited vehicle when officers personally witnessed suspect place evidence in vehicle); see also United States v. Williams, No. 0:19-CR-60198-UU-1, 2020 WL 1060396, at *2 (S.D. Fla. Mar. 5, 2020) (finding vehicle search conducted before arrest supported by automobile exception).  For these reasons, the Court finds the government has met its burden to show a warrant exception applied and the warrantless search and seizure were reasonable.

Defendant argues there was never sufficient justification to suspect him of the gunshots because (1) the black sedan sped away from the scene as Deputy Smith approached; (2) Deputy Smith did not actually see Defendant fire the handgun; (3) Deputy Smith found Defendant across the street from where the shooting most likely happened; and (4) Defendant fully complied with Deputy Smith's instructions.  Compiling a list of reasons why a suspect might be innocent is typically easy, but "the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause."  Paez v. Mulvey, 915 F.3d 1276, 1286 (11th Cir. 2019).  Defendant's arguments merely establish possible defenses at trial.

Finally, that later discovered facts revealed Defendant was likely not responsible for the gunshots is irrelevant to Deputy Smith's immediate observations.  "[I]nnocent behavior frequently will provide the basis for a showing of probable cause . . . the Constitution does not guarantee that only the guilty will be arrested."  Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018) (citing Gates, 462 U.S. at 243 n.13 (1983) (internal citations omitted); see Arrington v. Kinsey, 512 F. App'x 956, 960 (11th Cir. 2013) ("The ultimate release of charges, however, is of no significance in the probable cause analysis."); Smith v. Campbell, 295 F. App'x 314,

320 (11th Cir. 2008) ("[T]hat later evidence proved that [victim] had shot himself does not diminish the reasonableness of the officer's belief that [suspect] had shot him based on the evidence known to them at the time they . . . arrested [suspect].").

> **2. Alternately, Reasonable Suspicion Provided a Sufficient Basis for Searching the Truck and Temporarily Detaining Defendant**

Even if Deputy Smith's observations did not give rise to probable cause, there was at least reasonable suspicion that still justified searching the truck, handcuffing Defendant, and temporarily placing him in the patrol car. Under the Fourth Amendment, a police officer may, "in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry, 392 U.S. at 22. Such a brief seizure and investigatory detention, *i.e.*, a Terry stop, is appropriate where "(1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011) (citation omitted).

The facts here satisfy both elements. There was reasonable suspicion for the same reasons there was probable cause. See Illinois v. Wardlow, 528 U.S. 119, 123 (2000) ("[R]easonable suspicion is a less demanding standard than probable cause . . . ."); see also United States v. Williams, 619 F.3d 1269, 1271 (11th Cir. 2010) (finding reasonable suspicion to stop suspect after his car quickly exited high crime housing project within seconds after gunshot); United States v. Lightbourn, No. 08-20367-CR, 2008 WL 11439357, at *2 (S.D. Fla. Aug. 25, 2008) (finding reasonable suspicion to frisk suspect and search vehicle after officer heard gunshot by suspect's car and saw suspect bend down as if to place something under seat), *aff'd*, 357 F. App'x 259 (11th Cir. 2009).

11

The officers' actions were also reasonably related in scope to the investigation into the gunshots. To determine whether a seizure remained within the scope of a Terry stop or matured into a warrantless arrest requiring probable cause, courts examine "(1) the law enforcement purpose served by the detention; (2) the diligence with which the officers pursued the investigation; (3) the scope and intrusiveness of the investigation; and (4) the duration of the detention." United States v. Street, 472 F.3d 1298, 1306 (11th Cir. 2006); Acosta, 363 F.3d at 1145-46. In conducting its analysis, the Court should consider the totality of the circumstances and "must not adhere to 'rigid time limitations' or 'bright line rules,' but must use 'common sense and ordinary human experience.'" United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988) (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)) (internal citations omitted); United States v. Gil, 204 F.3d 1347, 1351 (11th Cir. 2000).

All four factors weigh heavily in support of the Court's finding that every aspect of the investigation, and all actions taken with respect to Defendant, remained within the scope of a Terry stop and did not transform the seizure into a de facto arrest. The officers conducted an investigation to determine whether Defendant was the shooter. They performed the investigation quickly and diligently, never strayed from the original purpose, were no more intrusive than necessary, and kept Defendant's detention short and reasonable given the circumstances. Approximately nine minutes elapsed from Deputy Smith stopping Defendant and Defendant's admission of his status as a felon to Deputy Phillips, and body camera footage shows officers acted efficiently and without delay to investigate the gunshots.

Defendant argues the stop was overly intrusive because officers handcuffed him and placed him in a patrol car. However, these safeguards were permissible during the Terry stop for safety purposes. See, e.g., Acosta, 363 F.3d 1147-48 (collecting cases); Gil, 204 F.3d at 1351 (allowing

seventy-five-minute detention while suspect handcuffed in back of squad car); United States v. Diaz-Lizaraza, 981 F.2d 1216, 1221 (11th Cir. 1993) (finding requesting identification, patting down suspect, and pointing weapon at suspect were reasonable protective measures). Deputy Smith waited until he found the handgun before ordering Defendant handcuffed and placed in the patrol car, which was reasonable and appropriate to ensure public safety during a shooting investigation. "The Supreme Court has stated that officers may take reasonable steps to ensure their safety so long as they possess 'an articulable and objectively reasonable belief that the suspect is potentially dangerous.'" Acosta, 363 F.3d at 1146 (quoting Michigan v. Long, 463 U.S. 1032, 1047-48 (1983)). The officers' safety concerns were reasonable; they believed Defendant had just fired a gun near a public road full of people visiting bars and clubs.

Last, Deputy Smith's quick search for weapons inside the truck's passenger compartment was also appropriate as a reasonable safety measure in a Terry stop. Long, 463 U.S. at 1052; see Terry, 392 U.S. at 25-26. ("A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation."). Deputy Smith's search took mere seconds, was solely aimed at discovering the handgun he already knew was under the driver's seat, and was motivated by a reasonable belief Defendant was dangerous. The search was justified even though Defendant was away from the truck at the time and in the presence of other officers. As the Supreme Court has explained, "If the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." Long, 463 at 1052-53; see Riley v. City of Montgomery, Ala., 104 F.3d 1247, 1253 (11th Cir. 1997) ("That both [the suspect] and his passenger had been removed from the car and were in the officer's custody [during a search for weapons] is inconsequential.").

### 3. The Eyewitness's Statements Did Not Dissipate Probable Cause or Reasonable Suspicion Before Defendant Volunteered His Felon Status

Only three minutes elapsed from the time the eyewitness said Defendant was not the shooter until Defendant admitted he was a felon, at which point officers had probable cause to arrest him for possession of a firearm as a convicted felon, in violation of both 18 U.S.C. § 922(g)(1) and O.C.G.A. § 16-11-131. Because one eyewitness's recollection of events is never failproof, officers were not constitutionally bound to stop the investigation and release Defendant immediately upon the eyewitness's utterance. Indeed, "a police officer's initial finding of probable cause justifies not only arrest, but also a reasonable period of continued detention for the purpose of bringing the arrestee before a magistrate." McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989) (citing Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986)). "The Fourth Amendment . . . does not place on police officers an affirmative and independent duty to further investigate in order to continually reassess the matter of probable cause in warrantless arrest cases." Barnett v. MacArthur, 956 F.3d 1291, 1301 (11th Cir. 2020).

The Court finds this same, strong reasoning applies equally to reasonable suspicion. See United States v. Bruce, 977 F.3d 1112, 1120 (11th Cir. 2020) ("Whatever innocent conduct could explain arguing, gun-in-hand, at 3:30 in the morning, does not negate the officers' reasonable suspicion. They had 'at least a minimal level of objective justification' for stopping [suspect] for investigative purposes.") (quoting Wardlow, 528 U.S. at 123)). When armed with probable cause or reasonable suspicion, officers cannot be required to forget why they were called to the scene. See id.; Navarette v. California, 572 U.S. 393, 403 (2014) (explaining "absence of additional suspicious conduct, after the vehicle was first spotted by an officer," did not dispel reasonable suspicion of drunk driving).

Furthermore, when an officer has probable cause, the officer is justified in taking actions consistent with that determination until presented with evidence strong enough to prove innocence beyond a reasonable doubt. See Barnett, 956 F.3d at 1297 (holding, in DUI context, probable cause is not dissipated until officers "obtain information which shows *beyond a reasonable doubt* that the arrestee is not intoxicated" (emphasis added)). In fact, the Eleventh Circuit has explained, in the context of reasonable suspicion, "if the initial stop was legal, the officer had the duty to investigate suspicious circumstances that then came to his attention." Hardy, 855 F.2d at 757 (internal quotations omitted); United States v. Hernandez, 418 F.3d 1206, 1211 (11th Cir. 2005) ("Once the Trooper developed this reasonable suspicion, he had a duty to investigate more.").

Here, during the three minutes in question, the evidence suggesting Defendant's innocence of the shooting never approached a level that would cast sufficient doubt on probable cause or reasonable suspicion, much less show innocence beyond a reasonable doubt. While the eyewitness said Defendant was not the shooter, Defendant was the only person found near the shooting with a handgun, and the eyewitness did not identify anyone she believed to be the shooter among the assembled suspects. There was also the possibility of multiple shooters since there were multiple gunshots. See Washington, 25 F.4th at 902-03 (holding probable cause supporting arrest warrant did not dissipate when witness stated suspect was not culprit because there were reasons to doubt witness and totality of circumstances supported probable cause); Huebner v. Bradshaw, 935 F.3d 1183, 1188-89 (11th Cir. 2019) (holding probable cause for warrantless arrest for battery simply based on "he-said/she-said" accusations did not dissipate after victim displayed no physical evidence of battery); Dunn, 345 F.3d at 1287, 1292 (holding "uncorroborated accounts" of two witnesses who stated suspect was not shooter did not vitiate probable cause in light of "overwhelmingly likely scenario from the guards' perspective" suspect was shooter); see also

15

United States v. Edwards, 632 F.3d 633, 640 (10th Cir. 2001) (finding probable cause for bank robbery arrest upon noticing suspect standing by bank with bag of money covered in red dye, even after officers learned that specific bank had not been robbed).

Accordingly, both probable cause and reasonable suspicion Defendant violated O.C.G.A. § 16-11-103 persisted until the officers had indisputable probable cause to arrest Defendant for the charged offense, which happened as soon as he volunteered his felon status. The search and seizure were therefore reasonable under the Fourth Amendment, and the motion to suppress should be denied.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**.  (Doc. no. 18.)

SO REPORTED and RECOMMENDED this 6th day of March, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA